Slip Op. 09-22

## UNITED STATES COURT OF INTERNATIONAL TRADE

```
———————————————————————                 :
KYD, INC.,                              :
                                        :
              Plaintiff,                :
                                        :
       v.                               :         Before:      WALLACH, Judge
                                        :         Court No.:    07-00456
UNITED STATES,                          :
                                        :
              Defendant,                :         PUBLIC VERSION
                                        :
          and                           :
                                        :
POLYETHYLENE RETAIL CARRIER             :
BAG COMMITTEE, HILEX POLY CO.,          :
LLC, and SUPERBAG CORPORATION,          :
                                        :
          Defendant-Intervenors.        :
———————————————————————                 :
```

[Plaintiff's Motion for Judgment on the Agency Record is DENIED and the Agency's Determination is AFFIRMED.]

Dated:        March 26, 2009

Riggle & Craven (David J. Craven and David A. Riggle) for Plaintiff KYD, Inc.

Michael F. Hertz, Acting Assistant Attorney General; Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (David S. Silverbrand); and Mark B. Lehnardt, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Counsel, for Defendant United States.

King & Spalding LLP (Joseph W. Dorn, Stephen A. Jones, Daniel L. Schneiderman, and Elizabeth E. Duall) for Defendant-Intervenors Polyethylene Retail Carrier Bag Committee, Hilex Poly Co., LLC, and Superbag Corporation.

# OPINION

**Wallach, Judge:**

# I
# INTRODUCTION

This action arises out of the administrative review of an antidumping duty order conducted by the United States Department of Commerce ("Commerce"). Plaintiff KYD, Inc. ("KYD") challenges two decisions made by Commerce during the course of the challenged review. First, KYD contends that Commerce erred when it selected King Pac Industrial Co., Ltd. ("King Pac") as a mandatory respondent. Second, KYD contends that Commerce erred when it assigned, based on the application of adverse facts available,[1] a 122.88% assessment rate for importations by KYD, a domestic entity, from King Pac, an unrelated foreign producer of the subject merchandise.[2]

This court has jurisdiction pursuant to 28 U.S.C. § 1581(c). Because Commerce's decisions are supported by substantial evidence and otherwise in accordance with law, Commerce's determination in <u>Polyethylene Retail Carrier Bags from Thailand: Final Results of Antidumping Duty Administrative Review and Partial Rescission of Antidumping Duty Administrative Review</u>, 72 Fed. Reg. 64,580 (November 16, 2007) ("<u>Final Results</u>") is affirmed.

---

[1] The United States Department of Commerce ("Commerce") uses the term "adverse facts available" to refer to two separate procedures: (1) the use of "facts otherwise available" when information requested by Commerce is either unavailable or deficient, 19 U.S.C. § 1677e(a); and (2) the use of "adverse inferences" in selecting from the facts otherwise available when a party fails to cooperate by not acting to the best of its ability, 19 U.S.C. § 1677e(b). <u>Jinan Yipin Corp. v. United States</u>, 526 F. Supp. 2d 1347, 1353 n.7 (CIT 2008).

[2] Plaintiff KYD, Inc. ("KYD") does not challenge Commerce's decision to calculate King Pac Industrial Co., Ltd's ("King Pac") dumping margin on the basis of adverse facts available because it acknowledges that King Pac did not participate in the administrative review. Motion for Judgment on the Agency Record Submitted Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade ("Plaintiff's Motion") at 12 n.3. Instead, KYD raises arguments with respect to the specific adverse facts available ("AFA") rate selected and applied.

# II
# BACKGROUND

Commerce entered an antidumping duty order on certain polyethylene retail carrier bags from Thailand in 2004. Antidumping Duty Order: Polyethylene Retail Carrier Bags from Thailand, 69 Fed. Reg. 48,204 (August 9, 2004) ("AD Order").  In 2006, Commerce published notice of the opportunity to request an administrative review of the AD Order for the period of review beginning August 1, 2005 and ending July 31, 2006. Antidumping or Countervailing Duty Order, Finding or Suspended Investigation; Opportunity to Request Administrative Review, 71 Fed. Reg. 43,441, 43,442 (August 1, 2006).  In response to this notice, domestic interested parties, and Defendant-Intervenors in the instant action, the Polyethylene Retail Carrier Bag Committee, Hilex Poly Co., LLC, and Superbag Corporation (collectively, "Defendant-Intervenors"), requested administrative review of 17 producers and/or exporters of polyethylene retail carrier bags from Thailand. Letter from Stephen A. Jones, King & Spalding LLP, to Hon. Carlos Gutierrez, Secretary of Commerce, U.S. Department of Commerce (August 31, 2006), Public Record ("P.R.") 3, Defendant's Public Appendix, Tab 1.

In September 2006, Commerce undertook the administrative review for all 17 companies for which a review was requested. Initiation of Antidumping and Countervailing Duty Administrative Reviews, 71 Fed. Reg. 57,465, 57,466 (September 29, 2006).  Commerce requested that these companies provide information regarding the quantity and value of their sales to the United States during the applicable period of review. Memorandum from Laurie Parkhill, Office Director, to Thomas Schauer, Senior Import Trade Compliance Analyst, U.S. Department of Commerce, AD/CVD Operations, Office 5, Re: Polyethylene Retail Carrier Bags from Thailand – Respondent Selection (November 9, 2006), Confidential Record ("C.R.") 11, Defendant's Confidential Appendix, Tab 1 ("Respondent Selection Memo") at 1.  After

3

receiving responses from all 17 companies, Commerce determined that it did not have sufficient

resources to complete an administrative review for each of the companies for which a review

was requested. Id. at 1–3. Thereafter, Commerce selected as mandatory respondents the four

companies that it determined represented the greatest possible export volume. Id. at 4–5.

King Pac was among the four mandatory respondents selected. Id. Commerce then sent

an antidumping duty questionnaire to King Pac. Letter from Laurie Parkhill, Office Director,

AD/CVD Enforcement, U.S. Department of Commerce, to James R. Simoes, Esq., Hunton &

Williams (November 9, 2006), P.R. 31, Defendant's Public Appendix, Tab 5. Six weeks later,

Commerce advised King Pac by letter that it had not received a response and offered to extend

the deadline for submission of the requested information. Letter from Laurie Parkhill, Office

Director, AD/CVD Enforcement, U.S. Department of Commerce, to Pattida Julasaksrisakul,

King Pac Industrial Co., Ltd. (December 21, 2006), P.R. 46, Defendant's Public Appendix, Tab

6. In July 2007, Commerce placed in the Administrative Record for the challenged review a

memorandum to the file incorporating two documents: (1) a memorandum dated January 16,

2004, explaining Commerce's determination to assign an 122.88% adverse facts available

("AFA") rate to Zippac Co., Ltd. ("Zippac") in the initial investigation[3]; and (2) a memorandum

dated August 31, 2006, explaining its decision to assign that same AFA rate to King Pac in the

---

[3] Zippac Co., Ltd. ("Zippac") was assigned an AFA rate in the initial investigation because it failed to respond to Commerce's questionnaire. Memorandum from Richard Rimlinger, Program Manager, to Laurie Parkhill, Office Director, AD/CVD Enforcement 3, U.S. Department of Commerce (January 16, 2004), at 3, appended to Memorandum from Hermes Pinilla, International Trade Compliance Analyst, AD/CVD Operations, Office 5, U.S. Department of Commerce, to The File (July 2, 2007), C.R. 48, Defendant's Confidential Appendix, Tab 2, P.R. 98, Defendant's Public Appendix, Tab 7 (collectively, "AFA Memo"). Commerce determined that the 122.88% AFA rate assigned to Zippac was properly corroborated by source documentation from third parties. Id. This rate was ultimately applied to Zippac at the conclusion of the investigation. Notice of Final Determination of Sales at Less than Fair Value: Polyethylene Retail Carrier Bags from Thailand, 69 Fed. Reg. 34,122, 34,122–25 (June 18, 2004).

first administrative review of the AD Order.[4] Memorandum from Hermes Pinilla, International

Trade Compliance Analyst, AD/CVD Operations, Office 5, U.S. Department of Commerce, to

The File, and attachments thereto (July 2, 2007), C.R. 48, Defendant's Confidential Appendix,

Tab 2, P.R. 98, Defendant's Public Appendix, Tab 7 (collectively, "AFA Memo").

Subsequently, Commerce published the preliminary results of this second administrative

review. Polyethylene Retail Carrier Bags from Thailand: Preliminary Results of Antidumping

Duty Administrative Review and Intent to Rescind in Part, 72 Fed. Reg. 37,718 (July 11, 2007)

("Preliminary Results").  In the Preliminary Results, Commerce stated that it would assign an

AFA rate to King Pac because it never responded to the antidumping questionnaire. Id. at

37,720.  Commerce selected the rate of 122.88% which had been assigned to Zippac in the initial

investigation and to King Pac after the first administrative review. Id.  Commerce determined

that the AFA rate remained both reliable and relevant. Id.

KYD filed a case brief challenging Commerce's selection of King Pac as a mandatory

respondent as well as Commerce's corroboration, and ultimate imposition, of the AFA rate. Case

Brief of KYD, Inc. before the U.S. Department of Commerce, Case No. A-549-821,

Administrative Review of Polyethylene Retail Carrier Bags from Thailand for the period August

1, 2005 to July 31, 2006 (August 10, 2007), C.R. 49, Defendant's Confidential Appendix, Tab 3,

P.R. 110, Defendant's Public Appendix, Tab 9 ("KYD Administrative Case Brief").  Commerce

rejected KYD's arguments. See Memorandum from Stephen J. Claeys, Deputy Assistant

---

[4]  After finding that King Pac "did not act to the best of its ability" during the first administrative review, Commerce preliminarily determined that the 122.88% AFA rate applied to Zippac in the initial investigation was relevant to King Pac because Zippac sold all of the products it produced to King Pac for export sale and King Pac was Zippac's only customer. Memorandum from Richard Rimlinger, Program Manager, to Laurie Parkhill, Office Director, Office 5, AD/CVD Enforcement, U.S. Department of Commerce (August 31, 2006), at 5, 6–7, appended to AFA Memo.  The final results of that review reflected Commerce's decision to assign a 122.88% AFA rate to King Pac. Polyethylene Retail Carrier Bags from Thailand: Final Results of Antidumping Duty Administrative Review, 72 Fed. Reg. 1,982, 1,983 (January 17, 2007).  That decision was affirmed by the court in Universal Polybag Co., Ltd. v. United States, 577 F. Supp. 2d 1284, 1298–1301 (CIT 2008).

Secretary for Import Administration, to David M. Spooner, Assistant Secretary for Import

Administration, U.S. Department of Commerce, Re: Issues and Decision Memorandum for the

Antidumping Duty Administrative Review of Polyethylene Retail Carrier Bags from Thailand

for the Period of Review August 1, 2005, through July 31, 2006 (November 8, 2007), P.R. 122,

Defendant's Public Appendix, Tab 11 ("Final Decision Memo") cmt. 1, at 2–4 (selection of

mandatory respondents), and cmt. 2, at 3–7 (imposition of AFA rate).  King Pac was assigned a

final AFA rate of 122.88%. Final Results, 72 Fed. Reg. at 64,581.

### III
### STANDARD OF REVIEW

The court must uphold a determination by Commerce resulting from an administrative

review of an antidumping duty order unless it is "unsupported by substantial evidence on the

record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); Carpenter Tech.

Corp. v. United States, 510 F.3d 1370, 1373 (Fed. Cir. 2007).

The substantial evidence test "requires only that there be evidence that a reasonable mind

might accept as adequate to support a conclusion." Cleo Inc. v. United States, 501 F.3d 1291,

1296 (Fed. Cir. 2007) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 477, 71 S. Ct.

456, 95 L. Ed. 456 (1951)).  While the court must consider contradictory evidence, "the

substantial evidence test does not require that there be an absence of evidence detracting from

the agency's conclusion, nor is there an absence of substantial evidence simply because the

reviewing court would have reached a different conclusion based on the same record." Id. (citing

Universal Camera Corp., 340 U.S. at 487–88); see also Am. Silicon Techs. v. United States, 261

F.3d 1371, 1376 (Fed. Cir. 2001); U.S. Steel Group v. United States, 96 F.3d 1352, 1357 (Fed.

Cir. 1996).

To determine whether Commerce's interpretation and application of the antidumping statute at issue "is in accordance with the law," the court must conduct the two-step analysis articulated by the Supreme Court in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842–43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).  Under the first step of the Chevron analysis, the court must ascertain "whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Wheatland Tube Co. v. United States, 495 F.3d 1355, 1359 (Fed. Cir. 2007) (citing Chevron, 467 U.S. at 842–43).

The court reaches the second step of the Chevron analysis only "if the statute is silent or ambiguous with respect to the specific issue." Id. (citing Chevron, 467 U.S. at 843).  Under this second step, the court must evaluate whether Commerce's interpretation "is based on a permissible construction of the statute." Chevron, 467 U.S. at 843.  The agency's construction need not be the only reasonable interpretation or even the most reasonable interpretation. Zenith Radio Corp. v. United States, 437 U.S. 443, 450, 98 S. Ct. 2441, 57 L. Ed. 2d 337 (1978).  The court must defer to Commerce's reasonable interpretation of a statute even if it might have adopted another interpretation if the question had first arisen in a judicial proceeding. Id. (citations omitted).

# IV
# DISCUSSION

KYD challenges Commerce's selection of King Pac as a mandatory respondent and Commerce's selection and application of the 122.88% AFA rate to King Pac's entries of the subject merchandise.[5]  These determinations are upheld.  Commerce's selection of King Pac as a mandatory respondent in the challenged review is in accordance with the methodology outlined in the relevant statute, 19 U.S.C. § 1677f-1.  Commerce's corroboration, and ultimate imposition, of the AFA rate is both in accordance with law and supported by substantial evidence.

## A
## Commerce's Selection Of Mandatory Respondents Is In Accordance With Law

KYD contends that Commerce's selection of mandatory respondents should have been limited, in the first instance, to those "foreign manufacturers that both requested a review and were the subject of a request for review by the domestic industry."  See Motion for Judgment on the Agency Record Submitted Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade ("Plaintiff's Motion") at 34.  Moreover, KYD contends that because King Pac's dumping margin was previously calculated on the basis of adverse facts available, "if Commerce did not elect to go with the [four] respondents for which there was a consensus about review, Commerce should have selected the respondent with the [fifth] largest volume . . . if [it] deemed that the volume of sales without King Pa[c] would be insufficient."  Id. at 36.  This

---

[5]  KYD asserts that certain determinations made by Commerce during the course of the administrative review "were not supported by substantial evidence on the agency record and were not otherwise in accordance with law."  Plaintiff's Motion at 2.  This is consistent with the standard of review set forth in 19 U.S.C. § 1516a(b)(1)(B)(i) and, as discussed in Section III, is the framework within which the court evaluates the challenged determinations. KYD's additional assertion that "Commerce acted in an arbitrary and capricious fashion and not in accordance with law when it calculated a 122.88% assessment rate for importations by KYD from King Pa[c] . . . based on the use of [a]dverse [f]acts [a]vailable," id., is not consistent with the "substantial evidence" standard of review applicable here.  In any event, the "arbitrary and capricious" standard is more deferential than the "substantial evidence" standard. See Consol. Fibers, Inc. v. United States, 535 F. Supp. 2d 1345, 1352–54 (CIT 2008) (citing In re Gartside, 203 F.3d 1305, 1312–13 (Fed. Cir. 2000)).

proposal would require Commerce to adopt a "crude quantity and value test" to assess whether the entity for which there was "consensus" about review was "comparable in size" to the entity for which there was no such "consensus." Id. at 36–37. KYD does not cite to any authority in support of either its proposed "consensus" methodology or its "crude quantity and value test" for mandatory respondent selection. See id. at 34–37. Neither of KYD's proposals is consistent with the methodology contemplated by the relevant statute.

Pursuant to 19 U.S.C. § 1677f-1(c), Commerce must calculate an individual margin for each known producer and exporter unless "it is not practicable" to do so "because of the large number of exporters or producers involved in the investigation or review." 19 U.S.C. § 1677f-1(c)(1)–(2); see Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316 ("SAA")[6] at 872 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4200. If it is not practicable to calculate individual dumping margins for each producer and/or exporter, Commerce is authorized by statute to limit its examination to either a "statistically valid" sample of exporters/producers or to those "exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that can be reasonably examined." 19 U.S.C. § 1677f-1(c)(2)(A)–(B); SAA at 872, 1994 U.S.C.C.A.N. at 4200–01.

Here, Commerce determined that it had sufficient resources to review only four companies. Respondent Selection Memo at 3. Commerce then selected as mandatory respondents the four largest exporters/producers of polyethylene retail carrier bags from

---

[6] The Uruguay Round Agreements Act was signed into law on December 8, 1994. The Act approved the new WTO Agreement, and the agreements annexed thereto, resulting from the Uruguay Round of multilateral trade negotiations conducted under the auspices of the General Agreement on Tariffs and Trade. 19 U.S.C. § 3511(a)(1). The Statement of Administrative Action approved by Congress to implement the Agreements is regarded as "an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and [the Uruguay Round Agreements] Act in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d).

Thailand, which collectively accounted for more than 90 percent of total imports of the subject merchandise. Id. at 4.  King Pac was one of the four entities selected, as it was among the four largest producers. Final Decision Memo cmt. 1, at 3.  Commerce's methodology for selecting mandatory respondents was entirely in accordance with the methodology prescribed by the statute.  It is irrelevant that King Pac did not request a review of itself.  It is also irrelevant that Commerce applied adverse facts available when calculating King Pac's dumping margin in the previous administrative review.

**B**
**Commerce's Selection And Imposition Of The AFA Rate Is Supported By Substantial Evidence and In Accordance With Law**

KYD argues that the AFA rate selected by Commerce is inappropriate for three reasons. First, KYD argues that the AFA rate was not corroborated properly.  To that end, KYD asserts that the AFA rate was neither corroborated by an independent source, as required by statute, Plaintiff's Motion at 12–17, nor shown to be reliable and relevant, id. at 17–22.  Second, KYD argues that the AFA rate is "[u]nduly [p]unitive." Id. at 23 (emphasis omitted), 23–30.  Third, KYD argues that because it is an "innocent importer," it should receive a different assessment rate for its imports of King Pac merchandise than the AFA rate assigned to King Pac. Id. at 30, 30–33.

**1**
**Commerce Corroborated The AFA Rate With Independent Information And Properly Determined That It Was Both Reliable And Relevant**

KYD's arguments regarding the propriety of Commerce's corroboration are predicated on the fact that the AFA rate selected was derived from the petition. Plaintiff's Motion at 12, 17. Information derived from the petition is characterized as "secondary information." SAA at 870, 1994 U.S.C.C.A.N. at 4199.  When Commerce uses secondary information, it "shall, to the

10

extent practicable, corroborate that information from independent sources that are reasonably at [its] disposal." 19 U.S.C. § 1677e(c).  In order to corroborate secondary information, Commerce must find that "the secondary information to be used has probative value." SAA at 870, 1994 U.S.C.C.A.N. at 4199.  Commerce evaluates whether secondary information has probative value by assessing its reliability and relevance. Mittal Steel Galati S.A. v. United States, 491 F. Supp. 2d 1273, 1278 (CIT 2007) (citing Ball Bearings and Parts Thereof from France, Germany, Italy, Japan, Singapore, and the United Kingdom: Final Results of Antidumping Duty Administrative Reviews, 70 Fed. Reg. 54,711, 54,712–13 (September 16, 2005)).

KYD contends that Commerce should not have used the petition rate to establish the AFA rate because it was "corroborated with the same information in the petition which formed the basis for the allegation in the petition." Plaintiff's Motion at 15.  According to KYD, such an interpretation "render[s] the corroboration provisions of the statute a nullity," id. at 15, and does not comport with the definition of "independent sources" provided in the SAA, id. at 15–16 (quoting SAA at 870, 1994 U.S.C.C.A.N. at 4199).  KYD characterizes the information used by Commerce to corroborate the petition rate as "more akin to the 'unverified allegation' discussed in the SAA as an exemplar of information which is not reliable." Id. at 16 (quoting SAA at 870, 1994 U.S.C.C.A.N. at 4199).

Commerce "corroborated the petition rate with import statistics, a price quotation for various sizes of polyethylene retail carrier bags . . . commonly produced in Thailand, and affidavits from company officials from different Thai producers of the like product." Final Decision Memo cmt. 2, at 5.  Both the SAA and the applicable regulation specifically provide that independent sources used to corroborate secondary information may include published price lists, official import statistics, customs data, and information obtained from interested parties

11

during a particular investigation. SAA at 870, 1994 U.S.C.C.A.N. at 4199; 19 C.F.R. §

351.308(d).  Commerce correctly concluded that "[t]he fact that these source documents were

included in the petition does not disqualify them as independent sources." Final Decision Memo

cmt. 2, at 5; see Universal Polybag Co. v. United States, 577 F. Supp. 2d 1284, 1300 (CIT 2008).

 KYD also argues that the petition rate was not corroborated by a showing of reliability

and relevance. Plaintiff's Motion at 17–22.  The reliability of an AFA rate is assessed by

determining whether the rate was reliable when first used. See Tianjin Mach. Imp. & Exp. Corp.

v. United States, Slip Op. 07-131, 2007 Ct. Int'l Trade LEXIS 137, at *44 (August 28, 2007).

The relevance of an AFA rate is measured against "past practices in the industry in question."

D & L Supply Co. v. United States, 113 F.3d 1220, 1223–24 (Fed. Cir. 1997); Shanghai Taoen

Int'l Trading Co. v. United States, 29 CIT 189, 197, 360 F. Supp. 2d 1339, 1346 (2008).

Commerce has, however, corroborated the AFA rate by showing that it is both reliable and

relevant.

 With respect to reliability, KYD contends that "Commerce should have re-examined the

petition data and compared the prices and values with those that were verified in the original

investigation to determine if the petition rate had been discredited." Plaintiff's Motion at 19.

According to KYD, because the petition rate is "43 times higher than the final 'all others' rate [in

the initial investigation] . . . it has been discredited . . . and therefore is not a reliable source for

the purpose of AFA." Id. (emphasis omitted).

 The petition rate has not been discredited.  To the contrary, it has been affirmed by this

court in the previous administrative review of the AD Order, specifically with respect to the

imposition of an AFA rate to entries made by King Pac. See Universal Polybag, 577 F. Supp. 2d

at 1300.  Moreover, as discussed above, this court has reaffirmed its holding in Universal

12

Polybag that the petition rate was corroborated by independent sources.  These findings

demonstrate the reliability of the petition rate.

With respect to relevance, KYD argues that, contrary to Commerce's stated position that

no information has been presented in this review that calls into question the relevance of the

petition rate, "the large gap between the petition rate (122.88%) and the dumping margin

(0.80%–5.6%) calculated by Commerce for all the cooperative respondents in all segments of

this proceeding does, by itself, call into question" its relevance. Plaintiff's Motion at 20 (citing

Final Decision Memo cmt. 2, at 6).  According to KYD, "[t]he sole corroboration for relevance

performed by Commerce was an attempt to bootstrap on the prior review by citing to the memo

analyzing the reasonableness of the AFA rate in that review, but without providing any analysis

of the reasonableness of the AFA rate in this review." Id. at 20–21 (citing Final Decision Memo

cmt. 2, at 6).  KYD asserts that because "not a single margin found for any entity in this review

was within 40% of the AFA rate . . . Commerce cannot use the petition rate as the AFA rate for

King Pa[c] in this review, as it has not been corroborated, and in fact cannot be corroborated, for

relevance." Id. at 22.

Contrary to KYD's assertion, the AFA rate has been corroborated for relevance.  That

same rate was applied to King Pac in the first administrative review of the AD Order.

Polyethylene Retail Carrier Bags from Thailand: Final Results of Antidumping Duty

Administrative Review, 72 Fed. Reg. 1,982, 1,983 (January 17, 2007).  Commerce's application

of that rate was affirmed by this court in Universal Polybag, 577 F. Supp. 2d at 1300–01.  The

court found that Commerce's application of "the highest prior rate assigned to a company in the

King Pac group . . . [was] appropriate because the company upon which the rate is based, Zippac,

is closely related to King Pac, and because it is within the discretion of Commerce to resort to

the highest prior rate in the assumption that it is an accurate reflection of the current margins."
Id. at 1300 (citing Rhone Poulenc, Inc. v. United States, 899 F.2d 1185, 1190 (Fed. Cir. 1990),
and Shanghai Taoen, 29 CIT at 197).

KYD's assertion that "[w]hile the AFA rate may have been 'reasonable' in [the] prior
review, it does not necessarily follow that it is 'reasonable' in this review," Plaintiff's Motion at
21, contradicts judicial pronouncements endorsing Commerce's selection of the highest prior
margin when a respondent does not cooperate.  The Federal Circuit has recognized that "[i]n
cases in which the respondent fails to provide Commerce with the most recent pricing data, it is
within Commerce's discretion to presume that the highest prior margin reflects the current
margins." Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330, 1339 (Fed. Cir.
2002); see also Rhone Poulenc, 899 F.2d at 1190 (finding that the presumption in favor of the
highest prior rate "reflects a common sense inference that the highest prior margin is the most
probative evidence of current margins because, if it were not so, the importer, knowing of the
rule, would have provided current information showing the margin to be less"); Shanghai Taoen,
29 CIT at 197.  Indeed, the Federal Circuit has recognized that the purpose of using the highest
prior rate is, in part, to "produce[] an antidumping duty rate that bears some relationship to past
practices in the industry in question." D & L Supply, 113 F.3d at 1223.

Commerce appropriately determined, within that framework, that the AFA rate remains
relevant in this review.  Commerce determined, in the preliminary investigation, that the source
documents "reflected commercial practices" in the polyethlyene retail carrier bag industry and
that, therefore, they were relevant to those mandatory respondents that did not participate in the
investigation. Preliminary Results, 72 Fed. Reg. at 37,720 (citing Notice of Final Determination
of Sales at Less than Fair Value: Polyethylene Retail Carrier Bags from Thailand, 69 Fed. Reg.

14

34,122, 34,123–24 (June 18, 2004) ("LTFV Investigation")).  Commerce thereafter determined that the AFA rate remains relevant to King Pac because it was not contested by any interested party in the initial LTFV Investigation and has not been judicially discredited. Final Decision Memo cmt. 2, at 6.  In addition, Commerce noted that "King Pac elected not to cooperate at all in this review, providing no information to refute the relevance of the [AFA] rate" selected. Id. Based on these determinations, it was reasonable for Commerce to "conclude that King Pac has not altered its past pricing practices and that its previous rate is reflective of its current pricing practices and, therefore, has relevance in this administrative review." Id. cmt. 2, at 7; see Shanghai Taoen, 29 CIT at 198–99.

**2**
**The AFA Rate Is Not Unduly Punitive In Nature**

KYD asserts that Commerce should not have used the petition rate as the AFA rate because it does not reflect an estimate of King Pac's dumping margin and is therefore "[u]nduly [p]unitive" in nature. Plaintiff's Motion at 23 (emphasis omitted).  According to KYD, "if an AFA rate is selected, such rate must reasonably reflect the rate that would have applied had the party cooperated with a reasonable additional amount to deter non-compliance." Id. (citing Shandong Huarong Gen. Group Corp. v. United States, Slip Op. 07-4, 2007 Ct. Int'l Trade LEXIS 3 (January 9, 2007)).  Moreover, according to KYD, the AFA rate applied "should reasonably reflect a company's dumping activity during the period of review and not simply represent dumping of the subject merchandise by some unrelated entity over an amorphous period of time." Id. (citing PAM, S.p.A. v. United States, 495 F. Supp. 2d 1360 (CIT 2007).

With respect to the first prong of the Shandong test, whether the starting point for the AFA rate selected was the rate that would have applied had the party cooperated, KYD asserts that the all-others rate of .95% calculated for those respondents not selected for review is "a

perfect substitute" for the rate that would have been applied if King Pac had cooperated. Plaintiff's Motion at 24. There is no basis for this assertion, as King Pac was in a different position than those respondents not selected for review. King Pac refused to cooperate in this review despite the fact that Commerce had applied an AFA rate of 122.88% in the first administrative review. See Preliminary Results, 72 Fed. Reg. at 37,720. Thus, it was reasonable for Commerce to infer that King Pac's actual dumping margin would not have been less than 122.88% because, if that were the case, King Pac "would have produced current information showing the margin to be less." Rhone Poulenc, 899 F.2d at 1190. Moreover, Commerce correctly stated that applying the all-others rate to King Pac "would allow King Pac to benefit significantly from its failure to cooperate in the instant review, contrary to [statutory] intent . . . as described in the SAA." Final Decision Memo cmt. 2, at 7.

With respect to the second prong of the Shandong test, whether the amount by which the "starting point" rate is augmented to deter non-compliance is reasonable, KYD asserts that "any rate based on AFA . . . should . . . be a low multiple (two, maybe three times) of the rate assigned to the non-selected respondents." Plaintiff's Motion at 29. In addition to citing the multiple of 1.3 to 2.5 applied in Shandong, id. at 26, KYD cites the 1:1 ratio for punitive damages established in Exxon Shipping Co. v. Baker, 128 S. Ct. 2605, 171 L. Ed. 2d 570 (2008), for this proposition, Plaintiff's Motion at 28. Those cases are inapposite. In Shandong, the plaintiffs had received their own calculated rates in previous reviews and the challenged AFA rate selected was higher than the plaintiffs' previous rates. Shandong, 2007 Ct. Int'l Trade LEXIS 3, at *16–17. In any event, this court has already determined that Shandong does not provide a numerical limit and that Commerce "is unfettered by absolute numerical limitations" when selecting an AFA rate. Universal Polybag, 577 F. Supp. 2d at 1301. This court has also previously determined that

16

<u>Exxon</u> is not relevant in this context. <u>See</u> <u>PAM, S.p.A. v. United States</u>, Slip Op. 08-94, 2008 Ct. Int'l Trade LEXIS 91 (September 9, 2008).

**3**

**KYD Is Not Entitled To An Assessment Rate For Its Entries Of King Pac Merchandise That Is Different From The Margin Assigned To King Pac**

KYD argues that "[a]n increase of duties resulting from a deposit rate of 2.80% to a liquidation rate [of] 122.88%" on an "innocent U.S. importer" is "inherently penal in nature." Plaintiff's Motion at 31.  According to KYD, because it is "clear that no finding has been made that KYD has not cooperated . . . no adverse inference should be drawn to KYD based on the misconduct of [King Pac,] an unrelated third party."[7] Plaintiff's Reply at 4.  In support of this proposition, KYD cites to both the statutory language authorizing the imposition of adverse inferences, 19 U.S.C. § 1677e(b), and to the regulation governing the calculation of assessment rates, 19 C.F.R. § 351.212(b). <u>Id.</u> at 4–5.

Neither of these citations support KYD's proposition.  KYD is correct that 19 U.S.C. § 1677e(b) provides Commerce with the discretion to apply adverse inferences against an interested party if it "finds that [the] party has failed to cooperate by not acting to the best of its ability," and that 19 C.F.R. § 351.212(b) qualifies its instructions for the calculation of assessment rates with the word "normally."  However, KYD overlooks the fact that importers are responsible to pay the antidumping duties to which they are subject, including any increases over the deposit made upon entry for estimated antidumping duties. <u>See</u> 19 U.S.C. § 1673g(b)(4); 19

---

[7]  Defendant-Intervenors in this action, Polyethylene Retail Carrier Bag Committee, Hilex Poly Co., LLC, and Superbag Corporation (collectively, "Defendant-Intervenors"), persuasively argued at oral argument that because KYD did not raise this argument in the administrative proceedings below (and that, in fact, KYD did not raise this argument until it filed its reply brief), KYD failed to exhaust its administrative remedies with respect to this argument. <u>See</u> 28 U.S.C. § 2637(d) (stating that this court "shall, where appropriate, require the exhaustion of administrative remedies").  The Federal Circuit has affirmed that "the application of 'exhaustion principles in trade cases is subject to the discretion of the judge of the Court of International Trade.'" <u>Agro Dutch Indus. Ltd. v. United States</u>, 508 F.3d 1024, 1029 (Fed. Cir. 2007) (citation omitted).  In this case, it is not necessary to address Defendant-Intervenors' objection in detail because KYD's argument fails as a matter of law.

U.S.C. § 1675(a)(2)(C); 19 C.F.R. § 141.1(b)(1).  Moreover, the discretion afforded by the regulation in calculating the assessment rate is just that, discretion.  KYD has not demonstrated that the regulation is unreasonable, nor that "the 'normal' method for calculating [the assessment rate] is inapplicable" here. <u>See</u> Plaintiff's Reply at 5.

**V**

**CONCLUSION**

For the above stated reasons, Plaintiff's Motion for Judgment on the Agency Record Submitted Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade is DENIED and Commerce's determination in <u>Polyethylene Retail Carrier Bags from Thailand:</u> <u>Final Results of Antidumping Duty Administrative Review and Partial Rescission of</u> <u>Antidumping Duty Administrative Review</u>, 72 Fed. Reg. 64,580 (November 16, 2007) is AFFIRMED.

_/s/ Evan J. Wallach_____
Evan J. Wallach, Judge

Dated: March 26, 2009
    New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                        :
KYD, INC.,                              :
                                        :
            Plaintiff,                  :
                                        :
      v.                                :        Before:      WALLACH, Judge
                                        :        Court No.:   07-00456
UNITED STATES,                          :
                                        :
            Defendant,                  :
                                        :
      and                               :
                                        :
POLYETHYLENE RETAIL CARRIER             :
BAG COMMITTEE, HILEX POLY CO.,          :
LLC, and SUPERBAG CORPORATION.          :
                                        :
            Defendant-Intervenors.      :
_____:

## ORDER AND JUDGMENT

This case having come before the court upon the Motion for Judgment on the Agency Record filed by Plaintiff KYD, Inc. ("Plaintiff's Motion"); the court having reviewed all pleadings and papers on file herein, having heard oral argument by each party, and after due deliberation, having reached a decision herein; now, in conformity with said decision, it is hereby

ORDERED ADJUDGED AND DECREED that Plaintiff's Motion is DENIED; and it is further

ORDERED ADJUDGED AND DECREED that the decision of the United States Department of Commerce in Polyethylene Retail Carrier Bags from Thailand: Final Results of Antidumping Duty Administrative Review and Partial Rescission of Antidumping Duty Administrative Review, 72 Fed. Reg. 64,580 (November 16, 2007) is hereby AFFIRMED; and it is further

ORDERED that all parties shall review the court's Opinion in this matter and notify the court in writing on or before Thursday, April 2, 2009 whether any information contained in the Opinion is confidential, identify any such information, and request its deletion from the public version of the Opinion to be issued thereafter. The parties shall suggest alternative language for any portions they wish deleted. If a party determines that no information needs to be deleted, that party shall so notify the court in writing on or before April 2, 2009.


                                        __/s/ Evan J. Wallach___
                                        Evan J. Wallach, Judge


Dated: March 26, 2009
        New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                                          Deputy Clerk